### JOHN P. KITCHENS v. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1187. Decided May 25, 1903.

**1.—Public Lands—Lease—Cancellation—Reletting—Payment of Arrears.**

The tender of rent due, not accepted, after the cancellation of a lease of public land for default in its payment, is not a compliance with the condition prescribed by the law (Act of 1895) prohibiting the making of a new lease to the former lessee until all arrears are fully paid. (Pp. 530, 531.)

**2.—Same—Who May Take Advantage.**

A reletting of public land to one whose lease has been canceled for default in payment of rent and who has not paid up the arrears, is unauthorized, and the land being thrown open to purchase by the cancellation, an applicant to buy it can take advantage of the invalidity of the second lease and maintain mandamus to compel the Land Commissioner to recognize his rights as a purchaser. (Pp. 530-532.)

Original application for mandamus against the Commissioner of the General Land Office.

*D. H. Meek,* for relator.—The original lease No. 13,977 to H. J. Runge of the lands in controversy by the Commissioner of the Land Office, on May 16, 1896, having been legally canceled by said Commissioner on the 20th day of July, 1898, the said Commissioner had no power or authority to lease the same lands to the said H. J. Runge, on the 25th day of July, 1898, by a new lease contract,—the rent being in arrears from the 16th day of May, 1898, and the said Runge failing to pay the same. Acts 24th Leg., chap. 47, sec. 22, p. 72; Sayles' Civ. Stats., art. 4218v; art. 3268, sub-secs. 1, 6; Thompson v. Buckley, 1 Texas, 33; Runnels v. Belden, 51 Texas, 48; Engelking v. Von Wamel, 26 Texas, 469; Turner v. Cross and Eddy, 83 Texas, 218; Cooper v. Yoakum, 91 Texas, 392; Dodson v. Bunton, 81 Texas, 658; Ketner v. Rogan, 95 Texas, 539; Hazlewood v. Rogan, 95 Texas, 295; Bates v. Bratton, 6 Texas Ct. Rep., 674.

The said lands having been classified, appraised and placed on the market and the petitioner having fully complied with the law, and his application to purchase said lands having been made after the expiration of the original lease by cancellation, the new lease was invalid, and the land embraced in the old lease was, upon the cancellation of that lease, upon the market for sale and subject to sale to actual settlers. Ketner v. Rogan, 95 Texas, 539; Hazlewood v. Rogan, 95 Texas, 295.

Defendant H. J. Runge, through his agent, attempted to revive and restore to life said canceled lease by tendering on July 23, 1898, the amount which he should have paid to the Treasurer within sixty days after May 16, 1898, and prior to the 16th of July, 1898. This is the sum and substance of his answer. He does not allege that upon the refusal of the Treasurer to receive the full year's lease money then past due, he proposed either to said Treasurer or to the Commissioner of the Land Office to pay up the lease money in arrears on said lease con- tract, and to make application for a new lease, and the said Treasurer refused to receive said lease money in arrears; but simply says that he immediately, through his agent, made application to lease and re-lease all of the land included in said original lease except such as had been leased to other parties.

The answer is silent as to such payment of rents in arrears and silent as to such tender and silent as to whether the Commissioner of the Land Office at the time he made the new lease contract No. 24,540, on the 25th day of July, 1898, had any notice or knowledge of the payment or tender of said arrears of said lease money due from said Runge on said original lease No. 13,977.

*Hill & Lee, E. Cartledge,* and *West & Cochran,* for respondent.—We respectfully submit that in view of the discretionary power pertaining to the sale and lease of the public school lands, vested in the Commis- sioner (Rev. Stats., art. 4218c, sec. 2, Act of 1895), notwithstanding the use of the word "shall," this court would be warranted in holding that the clause forbidding an original lessee from becoming a lessee until he pays his arrears is directory rather than mandatory. Often- times the words "shall" and "may" are used interchangeably. Says Chief Justice Waite: "As against the government the word 'shall,' when used in the statutes, is to be construed as 'may,' unless a contrary intention is manifest." Railway Co. v. Hecht, 5 Otto, 168. This court, in Weber v. Rogan, had occasion to pass upon the use of these two words in the statutes, so it would serve no useful purpose at this time, at length, to go into this matter. We insist, however, that such a pro- vision of the law was made for the benefit of the State alone and not for the benefit of a third party, who, after such lease has been in force for more than four years, seeks in this proceeding to attack its validity. At this late day, after the parties to the contract have acted upon it for so long a time, and both are satisfied, it certainly ought not to be abro- gated at the instigation of a third party who, at the time when the new lease was made to respondent Runge, had no interest whatever in the lands. We think relator stands in the shoes of one who seeks to ques- tion a patent which is valid on its face. No one but the State (even if she could in this instance, after so long a time, recognize the same) can question the lease which is conclusive against the rights of relator.

We believe the rule laid down in League v. Rogan, 59 Texas, 430, should apply. Says this court in that case: "When power exists in

the officer to act, his erroneous action is not void, but at most is only voidable; otherwise any person may attack a patent for errors of judgment in the officer empowered to issue it, and that which is intended to be among· the highest evidence of title be open to question by any one." In the case of Gullett v. O'Conner, 54 Texas, 416, it was held "that a patent which the Commissioner was prohibited by the Constitution to issue, was not void." See also De Court v. Sproul, 66 Texas, 370; Styles v. Gray, 10 Texas, 506; Johnson v. Smith, 21 Texas, 728.

In submitting this view we have not overlooked that it is well settled that the act of an officer done in violation of law is absolutely void. It should be borne in mind, however, that in this instance the Commissioner clearly had-the power to lease this land.

The Commissioner is presumed to have passed upon the qualifications of the party applying for the lease, and he certainly would not have issued the same unless the lessee was a party properly and legally qualified. The case at bar is analogous in this respect to that of Logan v. Curry, 95 Texas, 664, wherein this court held that the Commissioner's certificate of occupancy on the part of a party seeking to purchase the land is conclusive and not subject to collateral attack, because such would-be purchaser was not in fact an actual settler at the time of his application to purchase, or was acting in collusion with some other person or corporation, or for some other statutory ground he had no right to the land. See also Walraven v. Bank, recently decided in this court.

The fact that the Treasurer refused to accept any of the money because the old lease had been forfeited, under the statement as shown in the answer and the accompanying affidavit, certainly ought not to excuse him in receiving, in behalf of the State, the· full amount that might be due him from Runge when the same was thus voluntarily tendered.

Respondent Runge stands in the attitude of a purchaser of school lands; he having complied with all the requirements of law and tendered the amount of money necessary, still is refused the right to purchase public land. It is well settled that an applicant for the purchase of public land who has in all respects complied with the law and tendered the proper amount under the terms of the law, is as much entitled to relief as if his money had been actually accepted. Such an applicant could successfully maintain as against any subsequent claimant of the land, be he lessee or prospective purchaser, his prior right to the land. The courts under such a showing would render a judgment in his favor. Your honors under such a showing would compel the Commissioner of the Land Office to award him his land. Such is the attitude of the respondent Runge. Having done all in his power, he is entitled to the use and occupancy of the lands in controversy as against the relator whose claim had its inception more than four years after Runge had offered to pay the full amount of his arrears.

In the present state of pleadings is not the court warranted in assuming that the Commissioner of the Land Office was aware of the tender thus made by respondent through his agent Goeth, and that believing it was sufficient, he thereupon awarded him the lands embraced in the new lease? Are we not warranted in assuming that that state of affairs existed which empowered the Commissioner to act and authorized him to make the new lease? In discussing the Act of 1895 in Ketner's case, 95 Texas, 539, this court uses this language: "It submits to the Commissioner the determination of the question stated when application to lease is made, and if the conditions exist under which he is empowered to act, that is, if the land applied for is then subject to either sale or lease as he may determine, his decision would doubtless be conclusive and beyond review in the courts." Heil v. Martin, 70 S. W. Rep., 437; Schendell v. Rogan, 94 Texas, 589; Steel v. Smelting Co., 106 U. S., 450.

Hence we insist again that the act of the Commissioner in making the new lease to the respondent can not, in this proceeding, be successfully attacked by the one who bases his pretended right to question the same upon the application to purchase these lands after they had been leased more than four years by the respondent. The Commissioner has acted. His act is conclusive of relator's rights.

WILLIAMS, Associate Justice.—The pleadings show that prior to May 16, 1898, the land in controversy was included in lease to H. J. Runge. At that date the rent for the year 1898-99, payable in advance, became due and was not paid within the sixty days allowed by the statute for that purpose. The Commissioner, on July 20, 1898, regularly canceled the lease, because of the default. On the 23d of July, 1898, after the cancellation had taken place and notice thereof had been duly given by the Commissioner to the State Treasurer, Runge tendered to the latter officer the rent for the year named, which the officer declined to receive for the reason that the lease had been canceled. On the 25th of July, 1898, the Commissioner executed to Runge a new lease for the land, without exacting payment of the rent in arrears. At that time the rent, at least for the period from the 16th day of May until the 25th day of July, was in arrears. The Act of 1895, upon which the case depends, contained this provision: "If any lessee shall fail to pay the annual rent due in advance for any year within sixty days after such rents shall become due, the Commissioner of the General Land Office may declare such lease canceled by a writing under his hand and seal of office, which writing shall be filed with the other papers relating to such lease, and thereupon such lease shall immediately terminate, and the lands so leased shall become subject to purchase or lease under the provisions of this act. Such lease shall not be made to original lessees until all arrears are fully paid." The position of the relator is that the new lease executed to Runge was void, because it was made in violation of this provision. The respondent Runge contends, that the tender of the rent

for the year 1898-99 was a sufficient compliance with the 'law; and further, that, if this be not so, the nonpayment of rent in arrear was a fact of which the State alone could take advantage, and which did not affect the validity of his lease as between him and other persons. The tender of the rent upon the canceled lease was in no sense a compliance with the condition precedent prescribed by the statute to the granting of a new lease. The tender was properly disregarded by the Treasurer, because there was no lease in force to which the money could be applied. It did not constitute a payment of rent in arrears, and this is what the statute required before the execution of a new lease. A compliance with the statute could consist only in the payment of rent past due before the execution of the new lease. The tender was made to keep the old lease in force and was not repeated in the execution of the new contract.

The effect of the provision was to disqualify a defaulting lessee from leasing except upon compliance with the condition prescribed. The language used is not simply directory, but is strongly mandatory and prohibitive. It plainly prescribes a condition precedent to the exercise of a power by the Commissioner. If the provision were general and unqualified that no lease should be made to a defaulting lessee, it would be obvious that there would be no power in the Commissioner to make such a contract with a person so disqualified to lease. The effect of the statute is to thus disqualify the defaulting lessee, unless a condition precedent is performed. No doubt can therefore exist that the act of the Commissioner was void as against the State. The first sentence of the provision quoted has the effect to put the land upon the market for sale, under other provisions of the statute, immediately upon cancellation of a lease. It so continues until a valid lease is executed to take it off the market. We can not hold that a lease absolutely prohibited by law could have that effect. It is doubtless true that the State could give validity to such a contract by ratification, but no power is given by the statute to any officer to take such action as would be essential to a ratification. The State itself has not acted. Were it the case of a private individual whose agent had thus exceeded his power, acquiescence on his part might be inferred from the lapse of time, about four years, and acceptance of rent under the contract, and it might be true that no other person except the principal could set up the invalidity of the contract made by the agent. But such a principal would undoubtedly have the right to disregard a contract thus made without authority by the agent and to sell the property. The State can do the same thing, and by its public statutes it holds out to the public a constant offer to sell all of these school lands which have not been taken off the market by valid appropriation, and it therefore necessarily results, if the lease be not valid, that the land in question is open to applications to purchase. This is the only construction and application of the provision in question which will give effect to it, since there is no one who can determine for the State whether or not such transactions are to be avoided or allowed

to stand. Suth. Stat. Const., secs. 447, 454. We have given the questions involved mature consideration and can see no way to avoid the result reached, which is, that the relator is entitled to the mandamus prayed for commanding the Commissioner. to accept his application to purchase.

*Mandamus granted.*